## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| BMO HARRIS BANK N.A., a national banking association, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:23-cv-10992 |
| ROCKET TRANSPORTATION INC., And AMAR ALHADAD | ) ) ) | Hon. |
| Defendants. | ) ) ) | |

Anne M. Mayette (P79772)
**Husch Blackwell LLP**
120 South Riverside Plaza, Suite 2200
Chicago, IL 60606
312-655-1500

**Attorney for Plaintiff**

## VERIFIED COMPLAINT

Plaintiff, BMO Harris Bank N.A., by and through its attorneys, complains of

Defendants Rocket Transportation, Inc., and Amar Alhadad, as follows:

## PARTIES

1.     Plaintiff, BMO Harris Bank N.A. ("Plaintiff"), at all relevant times, was

and is a national banking association with its main office in Chicago, Cook County,

Illinois.  At all times, Plaintiff was and is authorized to transact business in the State of Michigan.

2.      Defendant, Rocket Transportation, Inc. ("Borrower"), is a Michigan corporation with its principal place of business in Taylor, Michigan.  Borrower can be served with process through its registered agent, Amar Alhadad, at 27005 Trolley Industrial Drive, Taylor, Michigan.

3.      Defendant, Amar Alhadad a/k/a Amar Al-Hadad ("Guarantor" and together with Borrower, "Defendants"), is an individual domiciled within, and a citizen of, the State of Michigan and may be served with process at 6601 Appoline Street, Dearborn, Michigan.

## JURISDICTION AND VENUE

4.      The parties are of diverse citizenship.

5.      The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

7.      This Court has personal jurisdiction over the Defendants as Borrower is a Michigan corporation operating a business within the State of Michigan and Guarantor is an individual residing and operating a business in the State of Michigan.

8.      Venue is proper in this Court pursuant to 28 U.S.C.  § 1391 because Borrower's principal place of business is located in Wayne County, Michigan and

Guarantor is an individual residing in and operating a business in Wayne County, Michigan.

## FACTUAL ALLEGATIONS

9.      Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

### *The Agreements*

10.     On or about November 20, 2018, Borrower entered into a Loan and Security Agreement (the "First Agreement") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (including any amendment or modifications thereto, the "First Agreement Collateral"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the First Agreement is attached hereto and incorporated herein as "**Exhibit A**."

11.     On or about January 3, 2019, Borrower entered into a Loan and Security Agreement (including any amendment or modifications thereto, the "Second Agreement") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (the "Second Agreement Collateral"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Second Agreement is attached hereto and incorporated herein as "**Exhibit B**."

12.    On or about January 29, 2019, Borrower entered into a Loan and Security Agreement (including any amendment or modifications thereto, the "<u>Third Agreement</u>") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (the "<u>Third Agreement Collateral</u>"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Third Agreement is attached hereto and incorporated herein as "**Exhibit C**."

13.    On or about July 22, 2019, Borrower entered into a Loan and Security Agreement (including any amendment or modifications thereto, the "<u>Fourth Agreement</u>") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (the "<u>Fourth Agreement Collateral</u>"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Fourth Agreement is attached hereto and incorporated herein as "**Exhibit D**."

14.    On or about February 6, 2020, Borrower entered into a Loan and Security Agreement (including any amendment or modifications thereto, the "<u>Fifth Agreement</u>") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (the "<u>Fifth Agreement Collateral</u>"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and

conditions stated therein.  A true and correct copy of the Fifth Agreement is attached hereto and incorporated herein as "**Exhibit E**."

15.    On or about April 2, 2020, Borrower entered into a Loan and Security Agreement (including any amendment or modifications thereto, the "Sixth Agreement") with Plaintiff wherein Plaintiff financed Borrower's purchase of the equipment described therein (the "Sixth Agreement Collateral"), and Borrower agreed to repay the financed amount, including interest, pursuant to the terms and conditions stated therein.  A true and correct copy of the Sixth Agreement is attached hereto and incorporated herein as "**Exhibit F**."

16.    From time to time herein, the First Agreement, Second Agreement, Third Agreement, Fourth Agreement, Fifth Agreement, and Sixth Agreement are referred to collectively as the "Agreements."

17.    From time to time herein, the First Agreement Collateral, Second Agreement Collateral, Third Agreement Collateral, Fourth Agreement Collateral, Fifth Agreement Collateral, and Sixth Agreement Collateral are referred to collectively as the "Collateral."

18.    On or about September 17, 2020, Borrower requested a payment modification on each of the accounts under the Agreements, and Plaintiff granted a modification for payments under the Agreements.  A true and correct copy of the

September 17, 2020, correspondence from Plaintiff to Borrower setting the terms of the modification (the "<u>Modification</u>") is incorporated into Exhibits A-F.

19.     The choice of law under each of the Agreements is that of the State of Illinois.  *See* Exhibits A–F, ¶ 7.6.

### *The Guaranties*

20.     To induce Plaintiff to enter into the Agreements, Guarantor unconditionally guaranteed the performance of Borrower in all of its present and future liabilities, obligations, and indebtedness to Plaintiff (the "<u>Guaranties</u>").  True and correct copies of the Continuing Guaranties dated November 20, 2018, January 3, 2019, January 29, 2019, July 22, 2019, February 6, 2020, and April 2, 2020, in favor of Plaintiff evidencing the Guaranties are attached hereto and incorporated herein as "**Exhibit G**."

21.     Under the Guaranties, Guarantor agreed to "pay and discharge all of [Borrower's] present and future liabilities, obligations and indebtedness to Bank, whether direct or indirect. joint or several, absolute or contingent, secured or unsecured, matured or un-matured, and whether originally contracted with or otherwise acquired by [Plaintiff]."  Exhibit G.

22.     The respective Agreements and Guaranties were entered into contemporaneously and for the same purpose and as part of the same transaction.

HB: 4874-8695-1767.5

### *Borrower Bankruptcy*

23.     On December 14, 2020, Borrower filed for protection under Subchapter V of Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), Case No. 20-52337-mlo (the "Borrower Bankruptcy").

24.     On June 3, 2021, Borrower proposed its First Amended Subchapter V Plan of Reorganization (the "Plan").

25.     Pursuant to the Plan, Borrower acknowledged its debts to Plaintiff and made an express, unconditional promise to pay the debts.

26.     On July 16, 2021, following a contested confirmation hearing, including objections by Plaintiff to its treatment under the Plan, Borrower confirmed the Plan as modified by the stipulated Order Confirming Debtor's First Amended Subchapter V Plan of Reorganization (the "Confirmation Order").

27.     With regard to the Agreements and the Collateral, the Plan provides, *inter alia*, for each of Plaintiff's claims, valuations of the respective Collateral, adjustments to the interest rate, payment terms, and maturity of the respective Agreements, and valuation and bifurcation of the respective claims under the respective Agreements into secured and unsecured claims.  *See* Plan, ¶¶ 4.3.4 - 4.3.10, Confirmation Order, ¶ 8-11.

28.     Further, for each Agreement, the Plan provides that Plaintiff shall retain its liens until its allowed secured claims are paid in full, and "[a]ll other terms and conditions of the parties contract(s) remain unchanged." *Id*.

29.     Pursuant to the Plan and Confirmation Order, Borrower was to commence making quarterly payments to Plaintiff thereunder on December 1, 2021, and continuing until Plaintiff's secured claims are paid in full. *Id*.

30.     Borrower failed to make the quarterly payments to Plaintiff due under the Plan and Confirmation Order on December 1, 2022 and March 1, 2023.

31.     With respect to Plaintiff's claims against Borrower under the Plan, the Confirmation Order provides, *inter alia*, that failure by Borrower to make payment to Plaintiff under the Plan so that quarterly payments are received by Plaintiff within fifteen days of their due date constitutes an event of default under the Plan and the Agreements.

32.     The Confirmation Order further provides that upon such default, Plaintiff may serve upon Borrower through its counsel of record in the Bankruptcy Case a notice of default with seven days to cure.  If the default is not cured within such time, Plaintiff "shall be entitled to pursue all of its rights and remedies under applicable non-bankruptcy law under its note and lien."  Confirmation Order, ¶ 12.

### *Guarantor Bankruptcy*

33.    On December 10, 2021, Guarantor individually filed for protection under Chapter 13 of the United States Bankruptcy Code in the Bankruptcy Court, Case No. 21-BK-49559 (the "Guarantor Bankruptcy").

34.    On September 15, 2022, the Chapter 13 Trustee for the Guarantor Bankruptcy brought a motion to dismiss the case and/or deny confirmation for cause, including unreasonable delay by the debtor that is prejudicial to creditors and that Guarantor had not acted in good faith in his bankruptcy case.

35.    On November 10, 2022, the Bankruptcy Court granted the Chapter 13 Trustee's motion dismissing the Guarantor Bankruptcy and lifting the automatic stay.  *See* Order Granting Trustee's Motion to Dismiss, a true and correct copy of which is attached hereto as "**Exhibit H**," and Notice of Dismissal, a true and correct copy of which is attached hereto as "**Exhibit I**."

36.    Under the terms and conditions of the Agreements, the filing of a petition in bankruptcy by Guarantor is an event of default.  *See, e.g.*, Exhibit A, at ¶ 5.1(e)(ii).

### *The Collateral*

37.    Pursuant to the Agreements, Borrower granted Plaintiff a first-priority security interest in the equipment described therein.

HB: 4874-8695-1767.5

38.     Plaintiff properly perfected its security interest in the Collateral by recording its liens on the certificates of title for each unit of the Collateral.  True and correct copies of the Michigan and Missouri Certificates of Title for the Retained Collateral (defined below) are attached hereto as "**Exhibit J**."

39.     Pursuant to the Plan, five units of the Collateral were to be surrendered to Plaintiff.

40.     Plaintiff recovered three of the five units of the Collateral, sold such units in a commercially reasonable manner, and applied any net proceeds therefrom to the amounts due and owing under the Agreements as modified by the Plan and Confirmation Order.

41.     Undisclosed by Borrower in connection with confirmation of the Plan, two of the five putatively surrendered units of Collateral were in the possession of a third-party towing service, which asserted a possessory lien on such units for amounts unpaid by Borrower.  Plaintiff was unable to recover the two units of Collateral in the possession of a third-party towing service in order to mitigate Plaintiff's damages, and Plaintiff incurred attorneys' fees and costs in attempting to recover said units.

42.     Under the Plan, Borrower retained possession of the remaining units of the Collateral (the "Retained Collateral") for ongoing use in its business.

43.     In summary, the Retained Collateral consists of the following:

HB: 4874-8695-1767.5

| Agreement | Year | Make | Model | Description | VIN |
|---|---|---|---|---|---|
| First | 2016 | Kenworth | T680 Series | Tractor | 1XKYD49X4GJ126062 |
| Second | 2019 | Kenworth | T680 Series | Tractor | 1XKYDP9X8KJ278923 |
| Third | 2017 | Kenworth | T680 Series | Tractor | 1XKYDP9X4HJ127019 |
|  | 2017 | Kenworth | T680 Series | Tractor | 1XKYDP9X7HJ126902 |
|  | 2017 | Kenworth | T680 Series | Tractor | 1XKYDP9X8HJ127072 |
| Fourth | 2016 | Kenworth | T680 Series | Tractor | 1XKYD49X1GJ491542 |
| Fifth | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0626LT169425 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0628LT169426 |
| Sixth | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P062XLT169427 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0621LT169428 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0626LT178545 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0628LT178546 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P062XLT178547 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0621LT178548 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P0623LT178549 |
|  | 2020 | Great Dane | 53' Dry Van | Trailer | 1GR1P062XLT178550 |

***Default under the Agreements as Modified by the Plan and Confirmation Order***

44.     Under the terms and conditions of the Agreements, failure to make a payment when due is considered an event of default. *See, e.g.*, Exhibit A, at ¶ 5.1(a).

45.     Borrower is in default under the Agreements as modified by the Plan and Confirmation Order for its failure to pay the amounts due thereunder.

46.     Specifically, Borrower failed to make the payments to Plaintiff due thereunder on December 1, 2022, and March 1, 2023.

47.     In addition, Borrower failed to make payments due to Plaintiff under the Plan and Confirmation Order on Plaintiff's unsecured claim.

48.     Borrower is in default under the Agreements due to the filing of the Guarantor Bankruptcy.

49.     Borrower's defaults under the Agreements as modified by the Plan and Confirmation Order are continuing.

50.     Guarantor is in default under the Guaranties for his failure to pay the amounts due under the Guaranties pursuant to the Agreements.

51.     Specifically, Guarantor failed to make the payments to Plaintiff due under the Agreements.

52.     Guarantor's defaults under the Guaranties are continuing.

53.     As a result of Defendants' defaults under the Agreements and the Guaranties, Plaintiff elected to accelerate the balance due under the Agreements and

HB: 4874-8695-1767.5

declare the entire indebtedness owed pursuant to the Agreements immediately due and payable.

54.    Under the Agreements as modified by the Plan and Confirmation Order, Borrower is obligated to pay interest at the contract rate set forth therein on any unpaid amounts due thereunder and, upon acceleration, Borrower is obligated to pay interest on all unpaid amounts at the rate of one and one-half percent (1.5%) per month or the maximum rate not prohibited by applicable law. *See* Exhibits A-F, at ¶ 5.3.

55.    In addition, under the Agreements, Borrower is obligated to pay late charges and other fees due under the Agreements. *See* Exhibits A-F, at PAYMENT SCHEDULE.

56.    In addition, under the Agreements, upon default, Borrower is obligated to pay all expenses of retaking, holding, preparing for sale, and selling the Collateral. *See* Exhibits A-F, at ¶ 5.2.

57.    In addition, under the Agreements, Borrower is obligated to pay the attorneys' fees and costs incurred by Plaintiff in the enforcement of its rights thereunder, including this lawsuit. *See* Exhibits A-F, at ¶ 5.2(a).

58.    Calculated as of March 31, 2023, the amount due and owing under the Agreements as modified by the Plan and Confirmation Order, not including attorneys' fees and costs of collection, was an amount not less than $393,575.18. In

HB: 4874-8695-1767.5

addition, default interest, fees, and expenses continue to accrue as set forth in the Agreements.

59.    Interest continues to accrue under the principal amounts due under the Agreements in the total amount of $138.93 *per diem*.

60.    Under the Guaranties, Guarantor is obligated to pay Plaintiff all amounts due to Plaintiff by Borrower under the Agreements, without limitation.

61.    Plaintiff has performed all obligations required of Plaintiff under the Agreements and the Guaranties.

### *Possession Of Collateral*

62.    Under the Agreements, upon Borrower's default thereunder, Borrower is obligated to immediately turn over to Plaintiff possession of the Collateral.

63.    By letter dated January 13, 2023, Plaintiff though counsel notified Borrower and its bankruptcy counsel of the post-confirmation default under the Agreements as modified by the Plan and Confirmation Order and made written demand upon Defendants to pay the amounts due and to surrender possession of the Collateral.  A true and correct copy of Plaintiff's Default and Cure Demand Notice dated January 13, 2023, is attached hereto as "**Exhibit K**."

64.    Plaintiff notified Defendants of its election to accelerate the amount due and owing under the Agreements and made demand upon Defendants to pay the amounts due and to surrender possession of the Collateral.

HB: 4874-8695-1767.5

65.     Despite express demand, Borrower has failed or refused to pay the amounts due and owing under the Agreements or to surrender possession of the Retained Collateral.

66.     Despite express demand, Guarantor has failed or refused to pay the amounts due and owing under the Guaranties pursuant to the Agreements.

## COUNT I
### *Breach of Contract (Borrower)*

67.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

68.     The Agreements as modified by the Plan and Confirmation Order represent a written contract between Plaintiff and Borrower.

69.     Plaintiff performed all of the obligations required of it under the Agreements.

70.     Borrower breached the contract by failing to make required payments due under the Agreements as modified by the Plan and Confirmation Order.

71.     As a result of the Borrower's breach, Plaintiff exercised its right to accelerate the unpaid balance due under the Agreements as modified by the Plan and Confirmation Order.

72.     Plaintiff has made demand upon Borrower, but Borrower has failed to tender payment in satisfaction of the indebtedness or to surrender the Collateral to Plaintiff.

15

73.    As a result, Plaintiff has been damaged by Borrower's failure or refusal to remit payment due under the Agreements or to surrender the Collateral to Plaintiff.

74.    Pursuant to the terms of the Agreements as modified by the Plan and Confirmation Order, Borrower is obligated to indemnify Plaintiff for any reasonable costs, including attorneys' fees, that Plaintiff incurs in enforcing its rights under the Agreements.   Plaintiff has already incurred attorneys' fees and costs and will continue to incur such fees and costs throughout the proceedings.

75.    Borrower has waived its right to a jury trial.

76.    For the reasons set forth above, Borrower is liable to Plaintiff for Borrower's breach of contract, plus interest accruing each day and costs of collection, plus all reasonable attorneys' fees and costs incurred in this matter.

## COUNT II
### *Breach of Contract (Guarantor)*

77.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as though set forth fully herein.

78.    The Guaranties represent a written contract between Plaintiff and Borrower.

79.    Plaintiff performed all of the obligations required of it under the Guaranties.

80.    Guarantor executed and delivered to Plaintiff the written Guaranties evidencing Guarantor's obligations.

HB: 4874-8695-1767.5

81.     Plaintiff relied on the Guaranties in financing Borrower's purchase of the Collateral.

82.     Plaintiff made demand on Guarantor to satisfy Borrower's obligations to Plaintiff; however, Guarantor has failed or refused to honor his obligations under the Guaranties.

83.     By breaching the Guaranties, Guarantors has damaged Plaintiff.

84.     The Guaranties provides that Guarantor shall pay to Plaintiff all reasonable attorneys' fees and costs and expenses incurred in connection with any indebtedness Guarantor fails to pay under the Agreements.

85.     Plaintiff has incurred and continues to incur expenses in its efforts to collect this debt, including attorneys' fees and costs.

86.     Guarantor has waived his right to a jury trial.

## COUNT III
### *Replevin*

87.     Plaintiff incorporates and realleges all preceding paragraphs in this Count III.

88.     This claim is brought pursuant to Rule 64 of the Federal Rules of Civil Procedure, and Mich. Comp. Laws § 600.2920.

89.     Pursuant to the Agreements, upon Borrower's default thereunder, Plaintiff is lawfully entitled to possession of the Retained Collateral.

90.     The Retained Collateral is wrongfully detained by Borrower.

HB: 4874-8695-1767.5

91.     According to the best knowledge, information, and belief of Plaintiff the reason for Borrower's detention of the Retained Collateral is Borrower's refusal to comply with the terms of the Agreements as modified by the Plan and Confirmation Order.

92.     The Retained Collateral consists of sixteen independent pieces of property, together with any accessories, accessions, replacement parts or substitutions.  Solely for the purpose of setting an appropriate bond and not as an admission of value, Plaintiff estimates the value of the Retained Collateral as approximately $362,825.00.

93.     Pursuant to the First through Fourth Agreements, when not in use, the First through Fourth Agreement Collateral is to be kept at Borrower's business location at 5000 Wyoming Street, Dearborn, Michigan 27005 Trolley Industrial Drive, Taylor, Wayne County, Michigan, but may not be at that location at any given time.

94.     Pursuant to the Fifth Agreement, when not in use, the Fifth Agreement Collateral is to be kept at Borrower's business location at 27005 Trolley Industrial Drive, Taylor, Wayne County, Michigan, but may not be at that location at any given time.

95.     The Retained Collateral has not been taken for a tax assessment, or fine, pursuant to a statute; or seized under an execution against the property of Plaintiff.

HB: 4874-8695-1767.5

96.     Plaintiff claims the value of the Retained Collateral not delivered to the officer by virtue of the enforcement of a writ of replevin.

WHEREFORE, Plaintiff prays that an order of replevin be entered on its behalf granting Plaintiff possession of the Retained Collateral, and that Plaintiff be granted such other and further relief as shall be just and equitable.

## COUNT IV
### *Specific Performance (Borrower)*

97.     Plaintiff incorporates and realleges all preceding paragraphs in this Count IV.

98.     In the event of default by Borrower under the Agreements as modified by the Plan and Confirmation Order, which remains uncured after seven days following written notice of default to Borrower, Borrower is obligated to return the Retained Collateral at its expense to any location that Plaintiff directs.

99.     In the event of default by Borrower under the Agreements as modified by the Plan and Confirmation Order, which remains uncured after seven days following written notice of default to Borrower, Plaintiff is entitled to take possession of the Retained Collateral or direct Borrower to remove the Retained Collateral to a place deemed convenient by Plaintiff.

100.     In the event of default by Borrower under the Agreements as modified by the Plan and Confirmation Order, which remains uncured after seven days

following written notice of default to Borrower, Plaintiff is entitled to repossess and remove the Retained Collateral, wherever located.

101.   Plaintiff has performed its obligations under the Agreements as modified by the Plan and Confirmation Order, and is ready, willing, and able to perform under the Agreements as modified by the Plan and Confirmation Order.

102.   Despite demand by Plaintiff, Borrower has failed to cure its defaults under the Agreements as modified by the Plan and Confirmation Order and has failed to return the Retained Collateral.

**COUNT V**
***Injunctive Relief***

103.   Plaintiff incorporates and realleges all preceding paragraphs in this Count V.

104.   Borrower continues to possess and utilize, or is capable of utilizing, the Retained Collateral for commercial purposes.

105.   On any given day the Retained Collateral is located, or is capable of being located, in diverse places throughout Michigan and surrounding states.

106.   The Retained Collateral is used to transport goods across the country and may not be in any one location for any prolonged period of time.

107.   The Retained Collateral depreciates and deteriorates as a result of its continued use by Borrower, with no commensurate value being conferred to Plaintiff in the form of payments due and owing from Defendants.

HB: 4874-8695-1767.5

108.   Given Borrower's possession of the Retained Collateral, it is within its power to conceal, waste, encumber, convert, convey, or remove the Collateral from the jurisdiction of the Court, or otherwise to render Plaintiff's post-judgment remedy inadequate.

109.   Plaintiff will suffer irreparable injury for which no adequate remedy at law exists unless Borrower and other persons and firms having knowledge of this injunction are: (a) enjoined from continuing to use the Retained Collateral; (b) ordered to advise Plaintiff of the location of the Retained Collateral; and (c) ordered to surrender the Retained Collateral to Plaintiff.

**WHEREFORE**, Plaintiff BMO Harris Bank N.A. prays for the following relief:

A.     Under Count I, that the Court enter judgment in Plaintiff's favor and against Borrower in the amount due under the Agreements, the exact amount to be proven at or before trial, plus additional interest accruing each day and costs of collection;

B.     Under Count II, that the Court enter judgment in Plaintiff's favor and against Guarantor, jointly and severally, in the amount due under the Guaranties, plus additional interest accruing each day and costs of collection;

C.     Under Count III, that the Court enter an order for possession in Plaintiff's favor and against Borrower for the Retained Collateral;

D.     Under Count IV, that the Court enter judgment in Plaintiff's favor and against Borrower, directing Borrower to specifically perform its obligations under the Agreements, and to return and allow the removal of the Retained Collateral;

E.     Under Count V, that the Court enter a permanent injunction in Plaintiff's favor and against Borrower ordering that,

      i.   Borrower and other persons and firms having knowledge of the injunction, including without limitation, Guarantor and any other officers and directors of Borrower having knowledge of the injunction, be temporarily, preliminarily, and permanently enjoined from using the Retained Collateral as of the date of entry of the injunction order;

      ii.   Borrower be ordered to disclose to Plaintiff the precise location of the Retained Collateral in order for Plaintiff to reclaim it;

      iii.   Borrower be ordered to recover the Retained Collateral in the hands of third parties for delivery to Plaintiff;

      iv.   Borrower be temporarily, preliminarily, and permanently enjoined from restricting access of Plaintiff to the Retained Collateral; and

      v.   Plaintiff be granted such other and further relief as shall be just and equitable.

HB: 4874-8695-1767.5

F.      That the Court award Plaintiff its reasonable attorneys' fees and costs incurred as a result of the prosecution of this action; and

G.      For such other relief as this Court deems just and equitable.

This the 27th day of April, 2023.         Respectfully Submitted,

**HUSCH BLACKWELL LLP**

*/s/ Anne M. Mayette*
By: Anne M. Mayette (P79772)
120 South Riverside Plaza
Suite 2200
Chicago, IL 60606
Telephone: (312)-341-9844
Facsimile: (312)-655-1501
Email: anne.mayette@huschblackwell.com

***Attorneys for BMO Harris Bank N.A.***

HB: 4874-8695-1767.5

## **VERIFICATION**

I, Debb White, declare as follows:

1.       I am employed by BMO Harris Bank N.A. ("Plaintiff"), as a Litigation Specialist and maintain an office at 3925 Fountains Drive NE, Cedar Rapids, Iowa.

2.       Plaintiff is the owner of the accounts of Rocket Transportation, Inc. ("Borrower"). I am authorized to make this Verification on behalf of Plaintiff.

3.       I am charged with administering Plaintiff's account with Borrower and am one of the custodians of the business records and credit files relating to the accounts of Borrower with Plaintiff.  I certify that such documentation is maintained by Plaintiff in the ordinary course of its business and as a regular practice.

4.       I have read the foregoing Verified Complaint and based upon personal knowledge and the business records of Plaintiff verify that the facts stated in it are true.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April ⁄4, 2023

_____
Debb White

HB: 4874-8695-1767.5